UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 05- |
| | : | |
| v. | : | VIOLATION:  18 U.S.C. § 152(7) |
| | : | (Fraudulent transfer of debtor's assets) |
| JEFFREY N. JACKSON, | : | |
| | : | |
| Defendant. | : | |

**I N F O R M A T I O N**

The United States Attorney charges that**:**

**COUNT ONE**

1. At all relevant times, defendant JEFFREY N. JACKSON ("JACKSON") was the Chief Executive Officer for the company Unlimited Security, Inc. ("Unlimited Security").

2. At all relevant times, Unlimited Security, the Headquarters of which was located at 611 L Street, N.W., Washington, D.C., was a company providing security services to the federal and local governments, including the District of Columbia.

3. On or about March 19, 2002, Unlimited Security filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Columbia, case number 02-0599 and styled "In re: Unlimited Security, Inc., Debtor." Following the bankruptcy filing, Unlimited Security continued to operate as a debtor-in-possession with defendant JACKSON remaining as Chief Executive Officer during its reorganization.

4. In or about the summer months of 2003, defendant JACKSON diverted a total of approximately $373,429.57 from the Unlimited Security debtor-in-possession bank accounts for his personal use, primarily for the purpose of funding a private professional boxing promotion business. The funds in those accounts had been advanced to Unlimited Security by a factoring company,

Commerce Funding Corp. of Vienna, Virginia ("Commerce Funding"), to be used solely to pay Unlimited Security's payroll, including payroll taxes.

5. In order to obtain the advances from Commerce Funding, defendant JACKSON signed an Assignment and Transfer of Receivables Agreement in which Unlimited Security received funds in the amount of 80% to 85% of its receivables. Every pay period, Unlimited Security would supply documentation to Commerce Funding showing total payroll expenses for that period and, as a result, a wire transfer of the factored amount was sent to Unlimited Security's bank accounts. Defendant JACKSON caused an overstated payroll report to be sent to Commerce Funding on more than one occasion in order that non-payroll expenses be covered, a violation of the agreement with Commerce Funding.

6. On or about June 26, 2003, $521,943.47 was wired from Commerce Funding to an Unlimited Security debtor-in-possession operating account. On or about June 27, 2003, defendant JACKSON caused a wire transfer of $142,429.57 from the Unlimited Security's operating account to a banking account of World's Finest Promotions LLC ("World's Finest"). World's Finest, which was owned by defendant JACKSON, was a business to sponsor professional boxing matches and was based at Unlimited Security's headquarters at 611 L Street, N.W., Washington, D.C.

7. On or about July 24, 2003, a consultant appointed by the bankruptcy court in the bankruptcy matter involving Unlimited Security ("Consultant") confronted defendant JACKSON who admitted that the funds discussed above in paragraph 6 had been removed at his direction from the operating account. Defendant JACKSON indicated to the Consultant that the funds would be replaced within seven to ten days. The funds, however, were not replaced.

8. On or about July 14, 2003, $185,521.36 was wired from Commerce Funding into an Unlimited Security operating account. On or about July 15, 2003, defendant JACKSON caused $119,000 to be transferred from the operating account into the tax account. On or about July 18, 2003, defendant JACKSON withdrew $105,000 from the tax account to purchase a cashier's check. Thereafter, defendant JACKON caused several additional financial transactions from the funds from this check, including defendant JACKSON receiving cash and additional cashier's checks. Some of these secondary cashier's checks were then used by defendant JACKSON to fund defendant JACKSON's boxing promotion business, including paying fees to the D.C. Boxing Commission and providing funds to a professional boxer ("Boxer #1).

9. On or about July 29, 2003, $208,114 was wired from Commerce Funding into Unlimited Security's operating account. On or about August 4, 2003, defendant JACKSON withdrew $10,000 from the operating account., and caused a check for that amount to be made payable to defendant JACKSON. Defendant JACKSON also caused $128,000 to be transferred to Unlimited Security's tax account. On August 7, 2003, defendant JACKSON did a counter withdrawal of $6,000 from the Unlimited Security tax account.

10. On or about August 12, 2003, defendant JACKSON withdrew $110,000 from the tax account and obtained a cashier's check made payable to an individual, a professional boxer ("Boxer #2"), for the purpose of an investment in Boxer #2's professional boxing career.

11. On or about August 13, 2003, the Consultant confronted defendant JACKSON who admitted that the funds transferred in July and August of 2003, discussed above in paragraphs 8, 9,

and 10, had been removed at his direction from the operating and tax accounts. Defendant JACKSON indicated to the Consultant that the funds would be replaced no later than by September 16, 2003. The funds, however, were not replaced.

12. The above-listed transfers, totaling approximately $373,429.57, were not authorized transfers by defendant Jackson from the operating funds of debtor-in-possession Unlimited Security, nor did defendant JACKSON repay any of this money to Unlimited Security.

13. On or about August 15, 2003, the United States Bankruptcy Court for the District of Columbia terminated defendant JACKSON'S ability to transfer funds from Unlimited Security's accounts.

14. Between in or about June 26, 2003, and in or about August 12, 2003, within the District of Columbia, and elsewhere, the defendant, JEFFREY N. JACKSON, who was the Chief Executive Officer of Unlimited Security, Inc., the Debtor in the case filed in the United States Bankruptcy Court for the District of Columbia under Title 11 of the United States Code, knowingly and

fraudulently, with intent to defeat the provisions of Title 11 of the bankruptcy law, transferred certain property, namely approximately $373,429.57 from Unlimited Security's operating and tax accounts, which funds belonged to the bankrupt estate.

**(Fraudulent transfer of debtor's assets, in violation of 18 U.S.C. § 152(7))**

                                    KENNETH L. WAINSTEIN
                                  UNITED STATES ATTORNEY
                                  D.C. Bar # 451058

By:     _____
             DANIEL P. BUTLER
             ASSISTANT UNITED STATES ATTORNEY
             D.C. Bar # 417718
             United States Attorneys Office
             555 4th Street, N.W., Room 5231
             Washington, D.C. 20530
             (202) 353-9431
             Daniel.Butler@USDOJ.Gov