UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. 05-449 (RMU) |
| | : | |
| v. | : | |
| | : | |
| **JEFFREY N. JACKSON,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, hereby submits this memorandum in aid of the sentencing of defendant Jeffrey N. Jackson. As will be discussed below, the government moves for a three-level reduction in the offense level for defendant's acceptance of responsibility and then requests a sentence within the resulting Sentencing Guidelines range, deferring to the Court as to the appropriate sentence within that range.

### I. FACTUAL BACKGROUND

On January 17, 2006, defendant pled guilty, pre-indictment, to a one-count Information charging fraudulent transfer of debtor's assets, pursuant to 18 U.S.C. Section 152(7). The underlying crime involved defendant illegally transferring over $373,000 from the bankruptcy estate of a company with which he was associated to use in funding his personal boxing promotion business. After defendant pled guilty, he was released on his personal recognizance, in which status he remains. Defendant is now set for sentencing on October 31, 2006, at 10:30 a.m.

According to the statement of offense filed in this matter and the Presentence Investigation Report ("PSR"), at pages 4-5, ¶¶ 6-15, both of which were agreed to by the defendant, PSR, at page 6, ¶ 18, at all relevant times, defendant was the Chief Executive Officer and co-owner of the

company Unlimited Security, Inc. ("Unlimited Security").  Unlimited Security, the Headquarters of which was located at 611 L Street, N.W., Washington, D.C., was a company providing security services to the federal and local governments, including that of the District of Columbia.

On or about March 19, 2002, Unlimited Security filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Columbia, case number 02-0599 and styled "In re: Unlimited Security, Inc., Debtor."  Following the bankruptcy filing, Unlimited Security continued to operate as a debtor-in-possession with defendant remaining as Chief Executive Officer during its reorganization.

In or about the summer months of 2003, defendant diverted a total of approximately $373,429.57 from the Unlimited Security debtor-in-possession bank accounts for his personal use, primarily for the funding of a private professional boxing promotion business.  The funds in those accounts had been advanced to Unlimited Security by a factoring company, Commerce Funding Corp. of Vienna, Virginia ("Commerce Funding"), to be used solely to pay Unlimited Security's payroll, including payroll taxes.

In order to obtain the advances from Commerce Funding, defendant signed an Assignment and Transfer of Receivables Agreement in which Unlimited Security received funds in the amount of 80% to 85% of its receivables.  Every pay period, Unlimited Security would supply documentation to Commerce Funding showing total payroll expenses for that period and, as a result, a wire transfer of the factored amount was sent to Unlimited Security's bank accounts.  Defendant caused an overstated payroll report to be sent to Commerce Funding on more than one occasion in order that non-payroll expenses would be covered, a violation of the agreement with Commerce Funding.

On or about June 26, 2003, $521,943.47 was wired from Commerce Funding to an Unlimited Security debtor-in-possession operating account. On or about June 27, 2003, defendant caused a wire transfer of $142,429.57 from the Unlimited Security's operating account to a banking account of World's Finest Promotions LLC ("World's Finest"). World's Finest, which was owned by defendant, was a business to sponsor professional boxing matches and was based at Unlimited Security's headquarters at 611 L Street, N.W., Washington, D.C.

On or about July 24, 2003, a consultant appointed by the bankruptcy court in the bankruptcy matter involving Unlimited Security ("Consultant") confronted defendant who admitted that the funds discussed above had been removed at his direction from the operating account. Defendant indicated to the Consultant that the funds would be replaced within seven to ten days. The funds, however, were not replaced.

On or about July 14, 2003, $185,521.36 was wired from Commerce Funding into an Unlimited Security operating account. On or about July 15, 2003, defendant caused $119,000 to be transferred from the operating account into the tax account. On or about July 18, 2003, defendant withdrew $105,000 from the tax account to purchase a cashier's check. Thereafter, defendant caused several additional financial transactions from the funds from this check, including defendant receiving cash and additional cashier's checks. Some of these secondary cashier's checks were then used by defendant to fund defendant's boxing promotion business, including paying fees to the D.C. Boxing Commission and to provide funds to a professional boxer ("Boxer #1).

On or about July 29, 2003, $208,114 was wired from Commerce Funding into Unlimited Security's operating account. On or about August 4, 2003, defendant withdrew $10,000 from the operating account, and caused a check for that amount to be made payable to defendant. Defendant

also caused $128,000 to be transferred to Unlimited Security's tax account. On August 7, 2003, defendant did a counter withdrawal of $6,000 from the Unlimited Security tax account.

On or about August 12, 2003, defendant withdrew $110,000 from the tax account and obtained a cashier's check made payable to an individual, a professional boxer ("Boxer #2"), for the purpose of an investment in Boxer #2's professional boxing career.

On or about August 13, 2003, the Consultant confronted defendant who admitted that the funds transferred in July and August of 2003, discussed above, had been removed at his direction from the operating and tax accounts. Defendant indicated to the Consultant that the funds would be replaced no later than by September 16, 2003. The funds, however, were not replaced.

The above-listed transfers, totaling approximately $373,429.57, were not authorized transfers by defendant from the operating funds of debtor-in-possession Unlimited Security, nor did defendant repay any of this money to Unlimited Security.

On or about August 15, 2003, the United States Bankruptcy Court for the District of Columbia terminated defendant's ability to transfer funds from Unlimited Security's accounts.

## II.  UNITED STATES SENTENCING GUIDELINES

The United States Sentencing Guidelines ("USSG"), § 3E1.1, provides for a two-level decrease in a defendant's offense level for acceptance of responsibility, and, upon motion of the government, for a defendant whose level is 16 or greater and who has in a timely manner advised the government of the defendant's intent to plead guilty, an additional one-level decrease. The defendant meets the criteria for a three-level decrease and the government hereby moves that he be given a three-level decrease in his offense level for acceptance of responsibility.

The Probation Officer believes that the defendant's total offense level after the three-level decrease for acceptance of responsibility is 19, his criminal history is I, and his guidelines range is 30 to 37 months of imprisonment. PSR, at page 15, ¶ 59; *see id.*, at page 7, ¶¶ 19-30 (Offense Level Computation). According to the PSR, the defendant presently falls within Zone D of the Sentencing Table. Id., at page 16, ¶ 67. A Guidelines sentence in Zone D requires a sentence of imprisonment. *See id.*

In its Guidelines calculation, the Probation Office gave defendant a two-level adjustment for role in the offense because "[t]he offense involved fraudulent actions during the course of a bankruptcy proceeding[,]" pursuant to USSG § 2B1.1(b)(8)(B). PSR, at page 7, ¶ 25, and pages 19-20. The parties did not include this adjustment in the plea letter, and defense counsel objected to it. *Id.*, at pages 19-20. The government is not advocating for this adjustment, having overlooked it in entering into the plea agreement, but acknowledges that, consistent with the Probation Officer's opinion, Amendment 597, USSG Appendix C - Volume II (2003), page 66, notes that "any case involving a bankruptcy fraud will result in a two-level enhancement[.]" *Id.*, at page 19. If this two-level enhancement is not applied, however, defendant's offense level would be 17, and his Guidelines range would be 24-30 months.

## V. **RECOMMENDATION**

Defendant pled guilty to misappropriating for his personal use approximately $373,429.57 from the Unlimited Security debtor-in-possession bank accounts. His conduct caused additional financial problems for a company that was already in dire financial straits. Defendant's actions hurt a number of entities and individuals, including the company, Unlimited Security, that was trying at that time to work through its bankruptcy reorganization, the employees of the company, the

5

bankruptcy system, the factoring company, that is, Commerce Funding, and the Internal Revenue Service, to which the payroll tax funds that he misappropriated were to be paid.[1] His actions constitute serious misconduct for which he needs to be held criminally accountable.

On the other hand, and to his credit, defendant quickly admitted his guilt in this matter and pled guilty pre-indictment.

In this case, the government accordingly is requesting that the Court sentence defendant within the sentencing range under the Guidelines, as set forth above, that is, 30-37 months under the calculations set forth in the PSR or 24-30 months as calculated in the plea agreement. *See* United States v. Dorcely, 454 F.3d 366, 376 (D.C.Cir. 2006) ("a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness"). A Guidelines sentence would help serve the dual purposes of punishment and deterrence. *See* 18 U.S.C. § 3553(a)(2)(A) and (B) ("[t]he court, in determining the particular sentence to be imposed shall consider . . . the need for the sentence imposed . . . to provide just punishment for the offense . . . [and] to afford adequate deterrence to criminal conduct"). Moreover, a Guidelines sentence within the appropriate range would help further "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). As to the appropriate sentence within the Guidelines range, the government defers to the Court.

The government also request that defendant be ordered to pay restitution in the amount for the loss in this matter, that is $361,330.21, as he has agreed to do in the plea letter. *See* PSR, at page

---

[1] The PSR, at page 14, ¶ 56, notes that, in defendant's personal bankruptcy proceeding, his largest creditor is the IRS, to which defendant owes almost $5,000,000. According to the IRS, this debt arose from defendant not paying the payroll taxes for Unlimited Security on numerous occasions.

3, ¶ 4, page 5, ¶ 16, and page 20, Supplemental Information; Plea Letter, at page 2, ¶ 4.[2]  It does not appear, however, that defendant has the additional ability to pay a fine.  PSR, at page 15, ¶ 57.

Finally, the government requests that the Court place defendant on three supervised release following his release from incarceration.  *See* PSR, at page 16, ¶ 64.

### VI.  **CONCLUSION**

WHEREFORE, the government respectfully requests that the Court impose a sentence within the applicable Guidelines sentencing range, order restitution and impose a period of supervised release of three years following defendant's incarceration.

    Respectfully submitted,

    JEFFREY A. TAYLOR
    UNITED STATES ATTORNEY
    D.C. BAR # 498610


By:      / s /
    _____
    DANIEL P. BUTLER
    D.C. Bar #417718
    ASSISTANT U.S. ATTORNEY
    555 4th Street, N.W.
    Washington, D.C. 20530
    (202) 353-9431
    Daniel.Butler@usdoj.gov

---

[2] As noted in the above-referenced pages from the PSR, there is a difference in the amount to which defendant agreed, $374,429.57, and the amount of the total loss now being reported by the trustee for the estate, that is, $361,330.21.  That difference is apparently due to some limited payments made on the debt by defendant.  Obviously, restitution should only be paid for the current actual loss, which here is the lower number.  The restitution can be sent to the Bankruptcy Estate for Unlimited Security at the address set forth in the PSR, at page 17, ¶ 74.